UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRANDON GROSS,              )
                            )
        Plaintiff           )
                            )   1:17-cv-00297-JAW
v.                          )
                            )
SCOTT LANDRY, et al.,       )
                            )
        Defendants          )

**RECOMMENDED DECISION ON DEFENDANT LANDRY'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR ORDER**

In this action, Plaintiff Brandon Gross, an inmate in the custody of the Maine Department of Corrections, alleges he is hearing disabled and that Defendant Scott Landry, the warden of the Maine Correctional Center, violated his rights by failing to accommodate Plaintiff's hearing disability.

The matter is before the Court on Plaintiff's Motion for Order and Defendant Landry's Motion for Summary Judgment. (ECF Nos. 16 & 30.) Through his motion, Plaintiff seeks preliminary injunctive relief.

Following a review of the summary judgment record, I recommend the Court grant Defendant's motion and deny Plaintiff's motion.

**I.   Defendant Landry's Motion for Summary Judgment**

**A. Background Facts**

On January 19, 2018, the Department of Corrections downgraded Plaintiff's security classification from medium to minimum, and transferred Plaintiff from the Maine Correctional Center, the facility for which Defendant Landry serves as warden, to the

Bolduc Correctional Facility. (Defendants' Statement of Material Facts (DSMF), ECF No. 31, ¶¶ 5, 7.) The chief administrative officer of the Bolduc Correctional Facility is the director, who is responsible for supervision and control of all prisoners, employees, grounds, buildings, and equipment at the facility. (*Id.* ¶ 9.)

Without citing to record evidence, Plaintiff asserted that Defendant Landry transferred Plaintiff as a retaliatory measure. (Responsive Statement ¶ 4, ECF No. 42.) Defendant Landry has denied the allegation of retaliation, and explained the process by which Plaintiff was transferred:

> The Department of Corrections' classification system is overseen by the Department's Director of Classification. (Affidavit of Mary Lucia ¶¶ 3-5 and attached Policy 23.1, Classification System, page 2, Procedure A (1) (July 17, 2017).) On November 29, 2017, a unit management team conducted a regularly scheduled reclassification review for prisoner Brandon Gross. (Affidavit of Luke Monahan ¶¶ 2-4; Affidavit of Mary Lucia ¶ 3 and attached Policy 23.1, Classification System, page 5, Procedure C (1), Proedure D (1).) The unit management team recommended that prisoner Brandon Gross's custody level be reduced from Medium custody to Minimum custody and that Gross be transferred to any Minimum facility based on the fact that Gross was case management compliant, that he had completed numerous program[s] at Maine Correctional Center, that he had less than a year left on his sentence, that he needed to transition to working prior to his release, and his age, in spite of recent disciplinary reports and ongoing criminal thinking. (Affidavit of Luke Monahan ¶¶ 5-6; Affidavit of Mary Lucia ¶ 3 and attached Policy 23.1, Classification System, page 6, Procedure D (8), (12).) Brandon Gross's pending lawsuit played no role in the unit management team's recommendation. (Affidavit of Luke Monahan ¶ 7.) Defendant Landry was not involved in prisoner Gross's November 29, 2017, reclassification review and had no input in the unit management team's recommendation. (Affidavit of Luke Monahan ¶ 8.) The unit management team's recommendation was approved by the Assistant Director of Classification on December 19, 2017. (Affidavit of Luke Monahan ¶ 9; Affidavit of Mary Lucia ¶ 3 and attached Policy 23.1, Classification System, pages 6-7, Procedure D (14).)

(Reply Statement ¶ 4, ECF No. 48.) Plaintiff maintains that Defendant Landry "is responsible for overseeing policies statewide," evidently suggesting that Defendant Landry retains responsibility for the provision of accommodations at the Bolduc Correctional Facility. (Responsive Statement ¶ 6.)

In his filings, Plaintiff also presented certain medical information, which includes the following progress note generated as the result of the care provided to Plaintiff by Defendant Correct Care Solutions following Plaintiff's transfer to the Bolduc Correctional Facility:

> Pt presents for follow up. He notes a spinning feeling at night, decreased [h]earing and tinnitus in his right ear. We discussed that this is consistent with Meniere's disease. [description of medications] Mr. Gross was very pleased with today's visit and was very appreciative of medical's working with Security to have him on the Wake Up log. He had a good deal of anxiety with worrying about missing count.

(Progress Notes for February 15, 2018, ECF No. 42-1.) Plaintiff further asserts that he "has now been transferred to the Bolduc Correctional Facility and upon his arrival was properly seen by a doctor and diagnosed … and properly accommodated …." (ECF No. 43.)

Through his motion for summary judgment, Defendant Landry contends Plaintiff's claims for injunctive relief against Defendant Landry are moot because Plaintiff is not currently assigned to the facility for which Defendant Landry is responsible.

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**C. Discussion**

Following a review of Plaintiff's complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A, the Court authorized Plaintiff to proceed on his clams for deliberate indifference, and his claims under the Americans with Disabilities Act and the Maine Human Rights Act. (Recommended Decision, ECF No. 19; Order Affirming the Recommended Decision, ECF No. 20.) The Court concluded Defendant Landry was an appropriate official capacity defendant for purposes of Plaintiff's plea for injunctive relief in the form of disability accommodations. (Recommended Decision at 9, ECF No. 19;

Order Affirming the Recommended Decision, ECF No. 20.) Defendant Landry contends that because Plaintiff is no longer an inmate at the Maine Correctional Center, the claim against Defendant Landry is moot. (Motion for Summary Judgment at 1, 3 – 5.)

"The Constitution 'confines the jurisdiction of the federal courts to actual cases and controversies.'" *Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) (quoting *Barr v. Galvin,* 626 F.3d 99, 104 (1st Cir. 2010)). "A case generally becomes moot when the controversy is no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Shelby v. Superformance Int'l, Inc.,* 435 F.3d 42, 45 (1st Cir. 2006)). "A prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release." *Id.*

In *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006), the Second Circuit held that a prisoner's claims for declaratory and injunctive relief against officials at a facility were mooted by the prisoner's removal from the facility. *Id.* at 272; *see also Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (mooting prisoner's claims for "modification of the conditions of confinement" at a state facility he no longer resided in). Similarly, in an unpublished table opinion, the First Circuit held that a prisoner's challenge to a New Hampshire state prison policy was mooted by the prisoner's transfer to a Massachusetts prison. *Stow v. Warden, N. H. State Prison*, 21 F.3d 420 (1st Cir. 1994) (table).

Here, Plaintiff's official capacity claim against Defendant Landry is the sole claim on which Plaintiff was authorized to proceed against Defendant Landry following the Court's review in accordance with 28 U.S.C. §§ 1915(e) and 1915A. When a state official is sued exclusively in an official capacity, the official is not subject to a money damage

5

award. *Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003). Because Plaintiff's only claim against Defendant Landry is one for injunctive relief, and because the uncontroverted record establishes that Plaintiff is no longer assigned to the Maine Correctional Center, where Defendant Landry serves as the warden, Plaintiff's claim is moot to the extent Plaintiff seeks to modify the conditions of confinement at the Maine Correctional Center.

Plaintiff argues, however, that a controversy remains because he wants Defendant Landry to expunge Plaintiff's disciplinary record, as the discipline imposed on Plaintiff has negatively impacted the calculation of his good time credits. (ECF No. 42 ¶ 9, citing *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005) ("To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiffs' demands; only then does no dispute remain between the parties."); and *Chapman v. Pickett*, 586 F.2d 22, 26 – 27 (7th Cir. 1978) ("Because there may yet be a continuing effect from the use of records maintained concerning the punishment [prisoner] received, we may not dismiss the matter as moot." (footnote omitted)).[1]

The expungement of disciplinary records is a recognized form of injunctive relief in prisoner litigation, *see*, *e.g.*, *Greybuffalo v. Kingston*, 581 F. Supp. 2d 1034, 1052 (W.D. Wis. 2007), amended (Sept. 25, 2007). In his complaint, Plaintiff asked for injunctive relief against Defendant Landry in the form of expungement of all disciplinary convictions described in the complaint. (Complaint, § VII.C., PageID # 16.) Plaintiff's request for

---

[1] Plaintiff also cites *Hill v. Marshall*, 962 F.2d 1209, 1213 – 14 (6th Cir. 1992). However, *Hill* does not concern mootness.

relief, however, relates to his efforts to secure his release from custody. In particular, Plaintiff asserts, "because of Defendant's continued denial of accommodation, Plaintiff was subjected to disciplinary infractions *that are still effecting the release of Plaintiff*." (Responsive Statement ¶ 4 (emphasis added).)

Because Plaintiff's plea for expungement of his record is a request to shorten the duration of his confinement, Plaintiff's exclusive federal remedy is a habeas corpus petition.[2] When a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from ... imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In *Wilkinson v. Dotson*, the Supreme Court explained that the requirement that a prisoner look to habeas corpus as his remedy arises "because nullification of the disciplinary procedures would lead necessarily to restoration of good-time credits and hence the shortening of the prisoner's sentence." 544 U.S. 74, 79 (2005). *See also Sullivan v. Pepe*, 36 F.3d 1089 (table), 1994 WL 542766, at *4 (1st Cir. 1994) (claim for restoration of good time credits not cognizable because habeas corpus, "with its attendant requirement of exhaustion of state remedies, is the sole remedy for state prisoners"). In this case, although Plaintiff's claim for injunctive

---

[2] A federal habeas petition may not be granted if the petitioner does not first exhaust available state court remedies. 28 U.S.C. § 2254(b), (c). "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin*, the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365 – 66).

relief against Defendant Landry is not based on § 1983, or due process,[3] but rather on federal and state disability law, the claim nonetheless requires the prior invalidation of the discipline through state proceedings, and if unsuccessful in state court, through a federal habeas petition. *Bogovich v. Sandoval*, 189 F.3d 999, 1002 – 3 (9th Cir. 1999) (disability discrimination claim subject to prior invalidation rule unless claim is prospective in nature); *Bain v. Hofmann*, No. 1:06-cv-231, 2007 WL 2318064, at *2 (D. Vt. Aug. 8, 2007) (same).[4]

## II. Plaintiff's Motion for Order

In support of his complaint, Plaintiff filed a declaration in which he reported that he was "still being denied accommodations for his hearing impairment," and he requested an order directing Defendants to issue Plaintiff a hearing impaired sign for his cell door and to provide Plaintiff with a consultative examination by an outside hearing specialist. The Court docketed the declaration as a motion for order and declaration. (ECF No. 16.) The Correct Care Solutions (CCS) Defendants oppose the motion as an inadequately supported

---

[3] Loss of the opportunity to earn good time credits, as compared to the loss of previously accrued credits, does not rise to the level of a liberty interest under the Due Process Clause. *See*, *e.g*., *Martin v. O'Brien*, 207 Fed. App'x 587, 589 (6th Cir. 2006) (observing that "prisoners have no liberty interest in opportunities to obtain good-time credits").

[4] Plaintiff's reliance on the Maine Human Rights Act would be relevant to any claim Plaintiff might assert in state court for expungement of his record and recalculation of good time credits. Technically, therefore, it is part of the claim that Plaintiff would need to pursue initially in state court. The Maine Administrative Procedures Act, 5 M.R.S. §§ 11001 et seq., and Me. R. Civ. P. 80B and/or 80C provide methods to obtain judicial review of final decisions by agencies such as the Department of Corrections. *See Fleming v. Dep't of Corr.*, 2006 ME 23, 892 A.2d 1161 (Rule 80C); *Carlson v. Oliver*, 372 A.2d 226 (Me. 1977) (Rule 80B). At this point, Plaintiff's state law claim may be barred as untimely and/or subject to a state law doctrine that mirrors *Preiser* and *Wilkinson*. *See Simpson v. Penobscot Cty. Sheriff's Dep't*, No. CIV.A. AP-02-33, 2003 WL 21919840, at *2 (Me. Super. Mar. 24, 2003) (barring claim under the Maine Declaratory Judgment Act, seeking expungement of prison disciplinary record, where prisoner had failed to pursue timely relief under Me. R. Civ. P. 80B and/or 80C).

motion for injunctive relief. (ECF No. 51.) According to the CCS Defendants, Plaintiff's hearing impairment has been properly diagnosed and there is no need to refer Plaintiff to an outside provider. (*Id.* at 6.)

When evaluating a request for injunctive relief, a court "must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996) (citing *Weaver v. Henderson,* 984 F.2d 11, 12 &n.3 (1st Cir. 1993), and *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir. 1991)). "The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

To prevail against the CCS Defendants on a disability discrimination claim, Plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability." *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006). Mere proof of medical negligence, however, is not sufficient to sustain a disability discrimination claim. *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006) (citing *Lesley v. Chie*, 250 F.3d 47, 55 (1st Cir.

9

2001) ("a plaintiff's showing of medical unreasonableness [under the Rehabilitation Act] must be framed within some larger theory of disability discrimination")).

To prevail against the CCS Defendants on a claim of unconstitutional denial of medical care, Plaintiff must demonstrate that Defendants have acted with "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical need[]," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 –106 (1976)). For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard focuses on the seriousness of the risk of harm to the inmate's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The subjective standard involves the culpability of the defendant. To establish liability, a plaintiff must establish that a defendant possessed a culpable state of mind

amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). In other words, the subjective standard focuses on whether the Defendants had a "purposeful intent" to neglect Plaintiff's serious medical needs. *Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) (citing *Estelle,* 429 U.S. at 105). A showing of such an intent requires evidence that the alleged absence or inadequacy of treatment was intentional. *Id.* (citing *Estelle*, 429 U.S. at 105 (holding that "an inadvertent failure to provide adequate medical care" is not a constitutional violation), and *Watson,* 984 F.2d at 540 ("The courts have consistently refused ... to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.")). "The typical example of a case of deliberative indifference would be one in which treatment is denied in order to punish the inmate." *Id.* (internal quotation marks omitted).

Deliberate indifference thus must be based on much more than ordinary negligence. The First Circuit has explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at

11

106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

Given the treatment, as reflected by the record, currently provided to Plaintiff, which treatment includes both medication for and some accommodation of Plaintiff's hearing-related needs, Plaintiff has failed to demonstrate a likelihood of success on his disability discrimination and deliberate indifference claim. That is, Plaintiff has failed to demonstrate that he is likely to establish that the CCS Defendants have discriminated against him or that they have been deliberately indifferent to a serious medical need. Plaintiff, therefore, has failed to demonstrate that he is presently entitled to preliminary injunctive relief.[5]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant Landry's Motion for Summary Judgment (ECF No. 30), and deny Plaintiff's Motion for Order (ECF No. 16).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district

---

[5] Injunctive relief is prospective in nature, and is concerned with existing conditions; it is not a form of punishment for retrospective deprivations. *United States v. Oregon State Med. Soc*., 343 U.S. 326, 333 (1952).

court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 14th day of May, 2018.